# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**MAR 10 2025**

**JEFFREY P. COLWELL**
**CLERK**

Civil Action No.

(To be supplied by the court)

**GERARDO FIGUEROA**_____, Applicant,

v.

**ANDRE "MOSES" STANCIL, In His Capacity As Executive Director Of The Colorado Department Of Corrections;**

**JASON LENGERICH, In His Capacity As Warden Of The BuenaVista Correctional Facility**_____, Respondent,

(Name of warden, superintendent, jailer, or other custodian)

and

The Attorney General of the State of:**PHILIP J. WEISER**_____, Additional Respondent.

(*Note: If you are attacking a judgment that imposed a sentence to be served in the future, you must fill in the name of the state where the judgment was entered. If you are attacking the execution of your sentence and not the validity of a state conviction or sentence, you must file an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. If you are attacking the validity of a judgment entered in a federal court, you must file a motion pursuant to 28 U.S.C. § 2255 in the federal court that entered the judgment.*)

## APPLICATION FOR A WRIT OF HABEAS CORPUS
### PURSUANT TO 28 U.S.C. § 2254

| NOTICE |
|---|
| Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files.  Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number.  A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. |

## A.   APPLICANT INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address.  Failure to keep a current address on file with the court may result in dismissal of your case.*

(Applicant's name, prisoner identification number, and complete mailing address)
**GERARDO FIGUEROA, CDOC# 172744**, Buena Vista Correctional Facility

*Indicate whether you are a prisoner or other confined person as follows: (check one)*

\_\_\_\_   Pretrial detainee
\_\_\_\_   Civilly committed detainee
\_\_\_\_   Immigration detainee
\_X\_\_   Convicted and sentenced state prisoner
\_\_\_\_   Convicted and sentenced federal prisoner
\_\_\_\_   Other: (*Please explain*)

## B.   RESPONDENT(S) INFORMATION

(Respondent's name and complete mailing address)
- **ANDRE "MOSES" STANCIL**, Executive Director Of The Colorado Department Of Corrections: CDOC Central Office, 1250 Academy Park Loop, Colorado Springs, CO. 80910.
- **JASON LENGERICH**, Warden Of The Buena Vista Correctional Facility: P.O. Box 2017, Buena Vista, CO. 81211.

**C.    CONVICTION UNDER ATTACK**

Name of the court that entered the
judgment of conviction: **DENVER DISTRICT COURT**

Date the conviction was entered: **APRIL 6, 2016**

Case number: **14CR5060**

Length and type of sentence: **INDETERMINATE, 13 YEARS TO LIFE**

Are you serving any other sentence?         ___ Yes  **X**  No (*check one*)

Offense(s) you were convicted of
committing :
Two alternative counts of sexual assault pursuant to section 18-3-402, C.R.S., subsections
(1)(h)("victim helpless"), a class 3 felony; and (1)(b)("victim incapable"), a class 4 felony.

What was your plea? **NOT GUILTY**

Kind of trial:                         **X**  Jury ___ Judge only (*check one*)

**D.    DIRECT APPEAL**

Did you file a direct appeal?             **X**  Yes ___ No (*check one*)

Name of the court in which the direct
appeal was filed: **COLORADO COURT OF APPEALS**

Date and result of direct appeal: **FEBRUARY 21, 2020 – AFFIRMED IN PART,
REVERSED IN PART. People v. Figueroa, 2019 Colo. App. LEXIS 1680**

Did you seek review in the state's highest
court on direct appeal?                 **X**  Yes ___ No (*check one*)

Date and result of review in the state's
highest court: **FEBRUARY 18, 2020 – DENIED. People v. Figueroa, 2020 Colo. LEXIS 151**

If you did not file a direct appeal, explain
why: **N/A**

**E.    POSTCONVICTION PROCEEDINGS**

Have you initiated any other post-conviction proceedings in any state court with respect to the judgment under attack?  **X**  Yes ___ No (*check one*).

*If your answer is "Yes," complete this section of the form.  If you have initiated more than one post-conviction proceeding, use additional paper to provide the requested information for each prior proceeding.  Please indicate that additional paper is attached and label the additional pages regarding previous lawsuits as "E. POSTCONVICTION PROCEEDINGS."*

Name and location of court: **DENVER DISTRICT COURT**

Type of proceeding: **Colo. Crim. P. 35(C)**

Date filed: **NOVEMBER 10, 2022.**

Date and result: **JANUARY 18, 2023 – MOTION DENIED.**

Did you appeal?                          **X**  Yes ___ No (*check one*)

Date and result on appeal: **MARCH 28, 2024 – ORDER AFFIRMED**

Did you seek review in the state's
highest court?                          ___ Yes  **X**  No (*check one*)

Date and result: **N/A**

**F.    STATEMENT OF CLAIMS**

*State clearly and concisely every claim you are asserting in this action.  For each claim, specify the right that allegedly has been violated and all facts that support your claim.  If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s).  Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "F. STATEMENT OF CLAIMS."*

*WARNING: If you fail to assert all of your claims in this application, you may be barred from presenting additional claims at a later date.*

**\*\*\*SEE, Attachment – F. Statement of Claims**

## G.    EXHAUSTION OF STATE REMEDIES

*WARNING: You must exhaust available state remedies before filing a habeas corpus action in federal court pursuant to 28 U.S.C. § 2254.  Your case may be dismissed if you have not exhausted available state remedies.*

Did you fairly present each claim asserted
in this action to the state's highest court?    **X**  Yes ___ No *(check one)*

If you answered "No," please identify which claim(s) have not been fairly presented to the state's highest court and explain why: **N/A**

## H.    PRIOR FEDERAL ACTIONS

Have you filed any prior actions in any federal court challenging the same conviction or sentence under attack in this action?  ___ Yes **X**  No *(check one)*.

If the instant action is a second or successive application, have you obtained authorization from the United States Court of Appeals for the Tenth Circuit for this court to consider the application?  **N/A**  Yes ___ No *(check one)*.

*Complete this section of the form if you have filed a prior federal action challenging the same conviction or sentence under attack in this action.  If you have initiated more than one prior action, use additional paper to provide the requested information for each prior action.  Please indicate that additional paper is attached and label the additional pages regarding prior actions as "H. PRIOR FEDERAL ACTIONS."*

Name and location of court:

Case number:

Type of proceeding:

Claim(s) raised:

Date and result: (attach a copy if available)

Result on appeal, if appealed:

## I.    TIMELINESS OF APPLICATION

*If the judgment of conviction or the sentence under attack became final more than one year prior to the commencement of this action, explain why the application is not barred by the one-year limitation period in 28 U.S.C. § 2244(d). If additional space is needed, use extra paper to explain your answer. Please indicate that additional paper is attached and label the additional pages regarding timeliness as "I. TIMELINESS OF APPLICATION."*

**\*\*\*See, Attachment – I. Timeliness of Application**

## J.    REQUEST FOR RELIEF

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "J. REQUEST FOR RELIEF."*

**Mr. Figueroa request for relief, he ask the Court grant his "Writ of certiorari", and grant his release from the custody of the "Colorado Department of Corrections", and reinstate any rights Mr. Figueroa was wrongfully stripped of; please and thank you.**

## K.    APPLICANT'S SIGNATURE

I declare under penalty of perjury that I am the applicant in this action, that I have read this application, and that the information in this application is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this application: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the application otherwise complies with the requirements of Rule 11.

_____  #172744   (Applicant's signature)

01/02/25 (Date)

(Form Revised December 2017)

## ATTACHMENT – F. STATEMENT OF CLAIMS

**CLAIM ONE:** Mr. Figueroa's Constitutional right to confrontation, as guaranteed under; U.S. Const. amends. VI, XIV; Colo. Const. art. II, §16, were violated because the court erroneously precluded the defense from engaging in appropriate cross-examination aimed at exposing the complainants motive to fabricate her allegations of sexual assault.

This issue was fully exhausted in state court because it was presented to the Colorado Court of Appeals on direct appeal in People v. Figueroa, 16CA1255; and also raised to the Colorado Supreme Court on certiorari in Figueroa v. People, 19SC919, and denied.

A. Standard of Review- Preservation

Although evidentiary errors generally are reviewed for an abuse of discretion, that standard "only applies if there is no infringement on the defendant's right secured by the Confrontation Clause." *Merritt v. People,* 842 P.2d 162, 166 (Colo. 1992). Whether a defendant's constitutional rights have been violated is reviewed de novo, *People v. Dunham, 381* P.3d 415, 419 (Colo. App. 2016), and the focus "is not the effect of the alleged error on the outcome of trial, but on the individual witness." *Merritt,* 842 P.2d at 166 (citing *Delaware v. VanArsdall,* 475 U.S. 673, 680 (1986)). Where, as here, the issue is preserved (TR 4/5/16, p 97-99, 105), constitutional harmless error review applies. *See Hagos v. People,* 288 P.3d 116, 119 (Colo. 2005).

B. Legal Framework and Analysis

A defendant has a constitutional right to confrontation, U.S. Const. amends. VI, XIV; Colo. Const. art. II, §16, which means more than just "being allowed to confront the witness physically"; rather, it means that the defense must be allowed an opportunity to effectively cross-examine a witness. *VanArsdall,* 475 U.S. at 679; *see Merritt,* 842 P.2d at 165; *see also People v. Crawford,* 553 P.2d 827, 829 (Colo. 1976) ("The right of a criminal defendant to confront his accusers includes the right to liberally cross-examine prosecution witnesses.").

To give proper scope to the right of confrontation, "a court must allow broad cross-examination of a prosecution witness as to bias, prejudice and motivation for

testifying." *People v. Bowman,* 669 P.2D 1369, 1375 (Colo. 1983). Consequently, although a court may limit the scope and duration of cross-examination, the court violates a defendant's right to confrontation when it prohibits a defendant "from engaging in otherwise appropriate cross-examination" designed "to expose the jury to the facts from which jurors...could appropriately draw inferences relating to the reliability of the witness." *Kinney v. People,* 187 P.3d 548, 559 (Colo. 2008) (quoting *VanArsdall,* 475 U.S. at 680).

Here, defense counsel sought to cross-examine the complainant A.M. about her motive for testifying; namely, that she had to maintain her initial false allegation against Petitioner because she perceived pressure from her mother to press forward with formal charges against him. A.M. had claimed that it was her decision alone to press charges, and when the defense sought to confront her about her mother's involvement, the prosecution lodged a peremptory objection on hearsay grounds. The defense clarified it was not seeking to elicit anything that A.M.'s mother had said, but rather was trying to elicit A.M.'s perception of what her mother wanted A.M. to do regarding whether to seek formal charges against Petitioner because it related to her credibility and motivation for going forward with her allegations by pressing formal charges. (TR 4/5/16, p.97-98) The prosecution responded by also objecting on speculation and relevancy grounds. (TR 4/5/16, p.97-98) The court initially indicated the question would not call for speculation, but then sustained a speculation objection to the following question: "And based on your dealing with your mom, your interactions with your mom, did you believe she wanted you to press charges?" (TR 4/5/16, p.98-99, 105:1-7) Consequently, the defense could only question A.M. about the fact she initially hesitated when asked whether she wanted to press charges, but the jury did not hear whether a perceived pressure from her mother to go forward had played a part in her motivation ultimately to do so. (TR 4/5/16, p.106-07)

The court of appeals agreed the trial court erred when it sustained the prosecution's speculation objection, concluding A.M.'s "answer would not have been speculative" since "the victim undoubtedly knows her own thoughts and perceptions." Slip Op. at 7. However, the court held there was no confrontation violation because, relying on this Court's decision in *Krutsinger v. People,* 219 P.3d 1054, 1061 (Colo. 2009), Petitioner "was not denied his only means of testing the victim's motive." Slip Op. at 6-8. Yet, the standard set forth in *Krutsinger* is the standard for determining whether there has been a violation of a defendant's *right to present a complete defense,* which is different from the standard for

determining a violation of the confrontation clause. While *Krutsinger* discusses the confrontation right generally, the standard for determining confrontation error remains the standard this Court set forth in *Merritt,* which is adopted from the United States Supreme Court in *Van Arsdall, supra:*

> We think a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby "to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness."

*Merritt,* 842 P.2d 162 (quoting *Van Arsdall,* 475 U.S. at 679) When this correct standard is applied, it is apparent that the trial court's ruling deprived Petitioner of his state and federal constitutional rights to confront A.M. about her motives for testifying, contrary to the holding of the court of appeals.

The defense theory was that A.M.'s initial false accusation was prompted by her desire to appear blameless when she was discovered by her cousin Ramirez—whom she otherwise revered--having consensual sex with Petitioner knowing, having seen Ramirez giving oral sex to Petitioner a few hours earlier, that Ramirez would be angry with her since Petitioner was off-limits by virtue of Ramirez staking her claim on him earlier. The prosecution attempted to counter this theory by arguing that A.M.'s initial accusation was the truth because the detective gave A.M. a "pretty open door" to own up to her lie when she asked if A.M. wanted more time to think about whether to proceed with formal charges against Petitioner, and A.M. had not backed off but instead endured a painful physical exam and the mortifying experience of testifying before strangers at trial. (TR 4/6/16, p.20-21) Hence, it was critical for the jury to understand that A.M.'s motivation to go forward with charges may not have been because her initial accusation was true, but rather because she was motivated by perceived pressure from her mother to do so. *Davis v. Alaska,* 415 U.S. 308, 317 (1974) (recognizing that jurors are "entitled to have the benefit of the defense theory before them so that they can make an informed judgment as to the weight to place" on a witness's testimony).

This Court should therefore review the decision of the court of appeals because the court misapplied and contravened this Court's precedent. *See* CAR 49(b) ("[T]he court of appeals...has decided a question of substance in a way probably not in accord with applicable decisions of the supreme court[.]").

For these reasons, Mr. Figueroa assets that his Constitutional right to confrontation, as guaranteed under; U.S. Const. amends. VI, XIV; Colo. Const. art. II, §16, have been clearly violated and therefore the writ should issue.

**CLAIM TWO:** Mr. Figueroa's Fundamental Constitutional rights, as guaranteed under; U.S. Const. amends. V, XIV; Colo. Const. art. II, §§16, 23, 25; In *re Winship,* 397 U.S. 358, 364 (1970), were violated because the court erroneously failed to provide the clear and undisputed answer to the Jury's legal question during deliberation in direct contravention of the Supreme Court's precedent.

This issue was fully exhausted in state court because it was presented to the Colorado Court of Appeals on direct appeal in *People v. Figueroa,* 16CA1255; and also raised to the Colorado Supreme Court on certiorari in *Figueroa v. People,* 19SC919, and denied.

A. Standard of Review and Preservation

Although a court's failure to provide additional instructions generally is reviewed for an abuse of discretion, *see People v. Mascarenas,* 972 P.2d 717, 723 (Colo. App. 1998), whether the court's response to a jury's question about an instruction fully and accurately informed the jury of the law is reviewed de novo, *c.f. Riley v. People,* 266 P.3d 1089, 1092 (Colo. 2011) (applying de novo review to determine whether the court properly informed the jury of the law). Where, as here, there was no objection to the court's response, *see* Part II.B., *infra,* plain error review applies. *See People v. Miller,* 113 P.3d 743, 749 (Colo. 2005); *see also People v. Rediger,* 416 P.3d 893, 902-03 (Colo. 2018) (recognizing where the defense merely does not object to an error and there is no evidence the defense knew of the error and intended to relinquish a known right relative to that error, the error is not waived; rather, plain error review applies).

B. Facts

The jury asked the following question during deliberations:

Is sobriety required to legally give consent- does submission under the influence of alcohol constitute consent?

(Supr., p.7) Without first consulting the parties, the court drafted a written response to both this question and another question asked by the jury, which stated as follows:

You have received all the instructions of law for your consideration.

(Supr., p.6) Afterward, the court presented its proposed response to the parties for their positions, and neither had any objections so the jury was instructed accordingly. (TR 4/6/16, p.58-59)

### C. Legal Framework and Analysis

A criminal conviction must rest upon proof beyond a reasonable doubt of every element of the offense. U.S. Const. amends. V, XIV; Colo. Const. art. II, §§16, 23, 25; *In re Winship,* 397 U.S. 358, 364 (1970). To effectuate this constitutional guarantee, the court must properly instruct the jury regarding every element of the offense. *Key . People,* 715 P.2d 319, 323 (Colo. 1986); *Chambers v. People,* 682 P.2d 1173, 1175-76 (Colo. 1984). Likewise, when it becomes apparent the jury misunderstands an element of the offense as described in an instruction, the court "has an obligation to clarify that matter for the jury in a concrete and unambiguous manner." *Leonardo v. People,* 728 P.2d 1252, 1256 (Colo. 1986); *see Bollenbach v. United States,* 326 U.S. 607, 612-13 (1946) ("When a jury makes explicit its difficulties a trial court should clear them away with concrete accuracy."). Failure to adequately respond to a jury's question about an element of the offense therefore violates the accused's fundamental constitutional rights. *See* U.S. Const. amends. V, VI, XIV; Colo. Const. art. II, §§16, 23, 25; *In re Winship,* 397 U.S. at 364; *c.f. Key,* 715 P.2d at 323 (holding an erroneous definition of "after deliberation" is constitutionally deficient because it interferes with the jury's ability to decide whether that element was established beyond a reasonable doubt).

In *Leonardo,* the jury was instructed correctly concerning the elements of the offense, yet the jury nevertheless asked for further clarification about the meaning of one of the elements. 728 P.2d at 1254. Although the jury's question called upon the court to "answer a question of law to which the answer is certain," the court did not answer the question directly and instead referred the jury back to the instructions. *Id.* On appeal, the Court acknowledged the instructions were generally adequate and jurors are presumed to understand and follow the instructions given. *Id.* at 1254-55. This Court observed, however, that at issue was not the "adequacy of the court's original instructions, but rather the jury's demonstrated misunderstanding of those instructions." *Id.* at 1255. Because the jury's question "affirmatively indicated" the jury misunderstood an element required to commit the charged offense—an "issue central to the determination of guilt or innocence"—this Court held the trial court had "an obligation to clarify that matter

for the jury in a concrete and unambiguous manner," which it failed to do when it merely referred the jury back to the instructions. *Id.* at 1255-56. Contrary to the court of appeals' holding, the same error occurred in Petitioner's case.

Here, Petitioner was charged with alternative ways of committing sexual assault—one under subsection (1)(b) and the other under subsection (1)(h). Sexual assault under subsection (1)(h) provides, "Any actor who knowingly inflicts...sexual penetration on a victim commits sexual assault if...[t]he victim is physically helpless and the actor knows the victim is physically helpless and the victim has not consented." §18-3-402(1)(h). "Physically helpless" is defined as "unconscious, asleep, or otherwise unable to indicate willingness to act." §18-3-401(3); *Platt v. People,* 201 P.3d 545, 550 (Colo. 2009). "Consent" is defined, in pertinent part, as "cooperation in act or attitude pursuant to an exercise of free will and with knowledge of the nature of the act." §18-3-401(1.5). As for subsection (1)(b), the statute provides, "Any actor who knowingly inflicts...sexual penetration on a victim commits sexual assault if...[t]he actor knows that the victim is incapable of appraising the nature of the victim's conduct." §18-3-402(1)(b). Although consent is not an affirmative defense under this subsection as it is under subsection (1)(h), proof that the actor knew the victim was incapable of appraising the nature of her conduct "necessarily negates consent." *Platt,* 201 P.3d at 550.

At trial, the prosecution argued Petitioner was guilty of sexual assault under either theory due to A.M.'s intoxication, but the level of A.M.'s intoxication was hotly disputed. A.M. herself testified that, although she had gotten "really drunk" earlier in the night, she was "100% sober" at the time the sexual contact occurred. (TR 4/5/16, p 86:17-21, 87-88) A.M.'s cousin's boyfriend Pelon testified that when he arrived at the party it appeared as though A.M and Ramirez had just started drinking, and that while he noticed A.M. drinking after that, she appeared normal later: she was walking and talking fine, did not stumble, and appeared relatively sober. For her part, Ramirez had told police that A.M. did not appear very drunk that night and was only a "3" on a scale of "1 to 10," with "one being completely sober and ten being wasted." (TR 4/5/16, p 68-69) It was therefore critical that the jury properly understood how, as a legal matter, intoxication factored into its consideration of both charges.

Yet, the jury's question affirmatively demonstrated that it did not understand the role of intoxication, and, contrary to the holding of the court appeals, its question related to the law, not mere application of facts to law, because it asked

whether "sobriety" is required in order to "legally give consent" (emphasis added). Further, the answer to this aspect of the jury's legal question is concrete and obvious: "No." Sobriety is plainly not, as a matter of law, a proxy for valid consent, as the jury's question effectively suggested. Rather, the jury must decide whether the prosecution proved beyond a reasonable doubt that Petitioner knew that A.M. was in a "sufficient state" of intoxication as to be unable to "appraise the nature of her conduct" or cooperate "with knowledge of the nature of the act." §18-3-401(1.5); *Platt,* 201 P.3d at 548; *see, e.g., Fletcher v. People,* 179 P.3d 969, 976 (Colo. 2007) (holding that evidence of the victim's severe intoxication—marked by vomiting, repeatedly passing out, and in need of support to walk—both before and after the sexual act "supports the jurors' decision that the defendant knew the victim was incapable of consenting to the sexual act"); *People v. Watson,* 53 P.3d 707, 711-12 (Colo. App. 2001) (holding that expert's testimony regarding psychological interaction of drugs and alcohol was admissible because the victim's level of intoxication was relevant to the jury's determination of whether the victim was so intoxicated as to be unable to consent to the contact); *c.f. People v. Cardenas,* 25 P.3d 1258, 1264-65 (Colo. App. 2000) (recognizing that intoxication does not necessarily "subvert consent" in the context of a valid Miranda waiver).

Accordingly, while it was the jury's duty to decide whether the level of intoxication was sufficient to invalidate consent, its question plainly demonstrated the jury erroneously believed anything short of sobriety was sufficient as a matter of law, which belief was implicitly confirmed when the court failed to correct this fundamental misunderstanding and instead referred the jury back to its original instructions, the very source of its confusion. Considering consent and intoxication were the issues "central to determination of guilt or innocence," the court had had "an obligation to clarify that matter for the jury in a concrete and unambiguous manner," which it did not do. *Leonardo,* 728 P.2d at 1255-56. The decision of the court of appeals must therefore be reviewed because it directly contravenes *Leonardo, supra. See* CAR 49(b).

For these reasons, Mr. Figueroa asserts that his fundamental Constitutional rights, as guaranteed under; U.S. Const. amends. V, XIV; Colo. Const. art. II, §§16, 23, 25; *In re Winship,* 397 U.S. 358, 364 (1970), have been clearly violated, and therefore the writ should issue.

**CLAIM THREE:** Mr. Figueroa's Constitutional right to effective assistance of counsel as guaranteed under U.S. Const. Amend. VI was violated because trial counsel failed to adequately continue with Mr. Figueroa's wishes to proceed with the final stage of jury selection, and was pressured to get on board with the mistrial that the prosecution had suggested.

This issue was fully exhausted in state court because it was raised in Mr. Figueroa's Crim. P. 35(c) proceeding, denied hearing, presented then to the Colorado Court of Appeals in People v. Figueroa, 2023CA453, and denied.

Mr. Figueroa claims that he was not effectively represented by counsel during final stages of jury selection, and allowed the prosecution to sabotage his fundamental right "that day" to a fair trial, by getting on board the following day with the prosecutions initiated move to end this jury pool with a mistrial, against Mr. Figueroa's wishes to proceed with jury selection.

"The Sixth Amendment guarantees criminal defendants "the right... to have the Assistance of Counsel for [their] defense. "The right to counsel includes "the right to the effective assistance of counsel." *Strickland v. Washington,* 466 U.S. 668, 686 (1984)(quoting *McMann v. Richardson,* 397 U.S. 759, 771, n.14 (1970)).

Competent legal representation is a critical facet of the due process right to a fair trial. *Engle v. Isaac,* 456 U.S. 107 (1982).

Mr. Figueroa was denied effective assistance of counsel which violated U.S. Const. Amend. VI, XIV because trial counsel failed to defend Mr. Figueroa's fundamental right to a fair trial, that was scheduled and was already in progress selecting the members of the jury, the day of February 16, 2016.

February 16, 2016, was the day scheduled and reserved for "jury selection", and before proceedings began each side had expressed that they were ready for trial.

What unfolded throughout the day in regards to the District Attorney's strategy that she chose for jury selection is written in detail; in Mr. Figueroa's 35 (c) petition, and the result her strategy was having on the "jury pool", ultimately the potential jurors that would decide in this case, was not showing favorable for the District Attorney's Office, represented in this case by Ms. Allison Rocker. Yet the fact that things are not going your way, doesn't give anyone the right to look for an issue to sabotage a defendant's right to a fair trial, which Mr. Figueroa argues in his 35(c) petition and furthermore, defends on Appeal to be given a chance to

prove the seriousness of "Prosecutorial misconduct" presented within the Rules given to a petitioner in his 35(c), ultimately denied, without hearing.

Ms. Allison Rocker, right before selecting the final 12 members of the jury from the 24 that remained, pled to the judge to grant a short-break, judge granted, and on return to the courtroom, Allison Rocker initiated by suggesting to the court a "mistrial".

Mr. Figueroa preserved this issue in timely presenting the allegations of "Prosecutorial Misconduct" in his 35(c) motion, and fully exhausting the issue on Appeal in *People v. Figueroa,* 2023CA453 and denied.

At this point Johanna Boyd, who was Mr. Figueroa's original Public Defender Attorney assigned to his case, objected to the mistrial and asked what where the reasons.

They discuss the "Alleged Issue" for a mistrial off record for a while, before the Judge recommended to go back on record.

It is also mentioned that, "the screen wasn't on earlier, somebody must of turned it on", and the judge seemed upset about it. Before making a decision on the issue, the Judge instructs the Defense and Prosecution to do some research overnight, and the following morning we can make a decision on the "Alleged Issue". The research overnight that they found where on two cases that were not exact to this issue but similar on both cases, they did not rule a mistrial on those cases, they proceeded.

On Mr. Figueroa's case, Ernie Beckman, who was to assist Johanna Boyd at trial, suggested to the defendant not to object to the mistrial, and this would give him more time to prepare for trial, Mr. Figueroa was willing to proceed with this trial because he had felt that this was a malicious attempt from the prosecution to get a new jury pool and "refine" her strategy that clearly wasn't giving her the outcome she wanted, but that shouldn't give her the right to sabotage the defendants right to a fair trial, and begin with jury selection all over again at a later date with a new jury pool.

Ernie insisted and told Mr. Figueroa how it'll be fine that the next jury pool should be the same, that I should use this time to save money and prepare myself and my family because even though if we beat these charges at trial, I was still facing a possible probation revocation sentence and to use this time to save money, is what he said to defendant. Mr. Figueroa then asked Johanna if she was ready to proceed

with this trial, she said that she was ready, but Ernie kept insisting, went and grabbed his supervisor to further attempt to convince the defendant to give this more time and Ernie even made a comment that Mr. Figueroa will never forget saying "If they find you guilty there gonna bury you underneath the prison". They kept going back in forth on how they needed more time and only because of all this did Mr. Figueroa get on board with the Mistrial, but Mr. Figueroa argues that this is not "Effective Assistance of Counsel" and his rights guaranteed by the Constitution were violated.

For these reasons, Mr. Figueroa asserts that his Constitutional right to effective assistance of counsel as guaranteed under; U.S. Const. Amend. VI were violated, and therefore the writ should issue.

## **ATTACHMENT – I. TIMELINESS OF APPLICATION**

Mr. Figueroa believes that the timeliness of this application may be called into question. Mr. Figueroa believes that this case falls within the equitable tolling exception, and also claims legal matters concerning the "violation of the constitution or laws... of the United States" of factual issues.

In order to establish equitable tolling, a petitioner must establish that (1) he has been pursuing his rights diligently and (2) some extraordinary circumstance stood in his way and prevented him from filing in a timely fashion. The United States Supreme Court established this two-part "extraordinary circumstance" test in *Holland v. Florida,* 560 U.S. 631, 649 (2010)(citing *Pace,* 544 U.S. at 418).

**Establishing two-part test:**

(1) Mr. Figueroa has been pursuing his rights diligently;
(2) some extraordinary circumstance stood in his way and prevented him from filing in a timely fashion;


- Mr. Figueroa timely appealed to the Colorado Court of Appeals, which affirmed his conviction on November 7, 2019.
- Mr. Figueroa then also, timely filed per C.A.R. 52(b)(1) his petition for Writ of Certiorari, pertaining to the issues presented to this court, which denied review, decided, February 18, 2020.
- On April 15, 2020, DOC had announced that two inmates at sterling tested positive for COVID-19.
- By April 28, 2020, Sterling had become the largest known outbreak of the disease in Colorado at that point, with 238 of 472 inmates testing positive for the virus, and that was only the beginning of what was to come across the entire Department of Corrections across Colorado.
- In the midst of the COVID-19 pandemic, Mr. Figueroa's responsibility to pursue his rights diligently where challenged and at times prevented by the extraordinary circumstances that were created amongst the population and conditions of the Colorado Department of Corrections due to the seriousness of the COVID-19 pandemic.
- COVID-19 created the extraordinary circumstance that stood in Mr. Figueroa's way to simultaneously pursue his Federal Habeas Corpus proceedings simultaneously with his state post-conviction proceedings.

- Yet, Mr. Figueroa continued to pursue his rights diligently, and timely filed his right in the state to a post-conviction 35(c) petition, in order to exhaust his state court remedies before seeking federal habeas relief. "Applying the tolling provision encourages respect for the principle of comity and compliance with the requirement that, ordinarily, a state prisoner must first exhaust his state court remedies before seeking Federal Habeas relief." *Gaskin v. Duval,* 183 F.3d at 10.

- On November 10, 2022, Mr. Figueroa timely filed his 35(c) petition within the Rules of a Crim. P. Rules 35(c)(3)(IV); also within the time limits set forth in section 16-5-402.

- On January 18, 2023, District Court Judge Ericka F.H. Englert, so ordered, Mr. Figueroa's petition DENIED. The Court likewise denies Mr. Figueroa's Request to Appoint Counsel and Obtain transcripts.

- On March 1, 2023, Mr. Figueroa files notice of Appeal to the Colorado Court of Appeals in order to review the District Court's conclusion on Mr. Figueroa's 35(c) petition.

- On March 28, 2024, the Colorado Court of Appeals affirmed the District Courts denial of 35(c) petition without hearing.

- Mr. Figueroa argues that he has satisfied the "extraordinary circumstance" test in; *Holland v. Florida,* 560 U.S. 631, 649 (2010), and "equitable tolling" applies to Mr. Figueroa's petition, since petitioner has shown that he has been diligently pursuing his rights, and furthermore has exhausted his state court remedies before seeking federal habeas relief, which shows respect for the principle of comity and compliance with such requirement.

Also, Mr. Figueroa adds a final consideration-and, possibly a qualification-is posed by the Antiterrorism and Effective Death Penalty Act of 1996(AEDPA). AEDPA does <u>not</u> purport to alter the federal courts habeas corpus jurisdiction over "violation[s] of the Constitution or laws or treaties of the United States" or in any way to amend the preexisting jurisdictional statutes. AEDPA does, however, add or modify certain barriers to habeas corpus consideration and relief, which petitioners may SURMOUNT only by proving that the violations they allege have particular attributes. For reasons that are not readily apparent- or, more probably, as a result of careless drafting-these barrier-avoiding provisions at times refer to violations of all types of "Federal right[s]" or to all types of "claim[s]" cognizable in habeas corpus, but at other times refer only to "violation[s] of the Constitution or laws [but not treaties] of the United States"

or only to violations of "Constitutional right[s]" or to "constitutional error." The haphazard-and, at times, downright arbitrary-nature of the discrepancies among these provisions, and between them and the habeas corpus statutes' unamended jurisdictional provisions, should make courts think twice, even in an era of "plain meaning" statutory interpretation, before placing too much emphasis on their nuances.

As a general rule, therefore, all properly exhausted and preserved federal constitutional claims challenging the legality of a State's or the Federal Government's holding the petitioner in custody, or the terms, duration, and possibly the conditions of that custody, are cognizable in habeas corpus, and AEDPA does NOT purport to alter the federal courts' habeas corpus jurisdiction over "violation[s] of the Constitution or laws or treaties of the United States".

Therefore the claims brought forward in this petition are within the federal courts' habeas corpus jurisdiction, because they have all been properly exhausted and been preserved and argued, and challenged as Federal Constitutional claims, and to deny Mr. Figueroa review of cognizable claims would be a "miscarriage of justice".

## THE RELEVANCE OF INNOCENSE

The Courts recognition of an "actual innocence" gateway through defenses to habeas corpus relief is neither surprising nor controversial. More troubling, however, would be a limitation of such gateways to innocence claims. Making innocence the only way around procedural obstacles to habeas corpus relief would deviate from: the historical recognition of a variety of exceptions to defenses to habeas corpus review; the clear legislative intent of section 2254 to place legal matters concerning the "violation of the Constitution or laws... of the United States" at the top of the hierarchy of reviewability and "determination(s) of... factual issues(s)".

Closer analysis reveals, however, that the Court recognizes a range of exceptions to its various preclusion doctrines in habeas, including but not limited to innocence, and that the overall collection of recognized exceptions is not very different from the meaning the Court has assigned to "manifest miscarriage of justice" in other contexts. For example, in one or another context, the Court supplements its willingness to sidestep procedural obstacles

upon a showing of the petitioners probable innocence with a willingness to do the same when necessary:

1) To assure federal court redress for:
   a. "structural defects in the constitution of the trial mechanism";
   b. Violations of "fundamental," "bedrock," or "watershed" rules that undermine the fundamental fairness of the proceeding;
   c. Procedures that "had the effect of foreclosing meaningful exploration of defenses," "precluded the development of true facts [or] resulted in the admission of false ones'" or "serve[d] to pervert the jury's deliberations concerning the ultimate question";
   d. Constitutional "errors" occurring under circumstances-for example, in the absence of effective assistance of counsel-that "so upset the adversarial balance... that the trial was rendered unfair and the verdict rendered suspect"; and
   e. "deliberate and especially egregious error[s] of the trial type, or one[s] that [are] combined with a pattern of prosecutorial misconduct {that} so infect the integrity of the proceeding[s] as to warrant the grant of habeas relief";

Thus, innocence clearly is relevant in habeas corpus proceedings, Innocence is not, however, necessary condition of habeas corpus relief, although it is a necessary condition of some (but not all) "gateways" through otherwise preclusive defenses to habeas corpus relief. Mr. Figueroa's claims fall within the jurisdiction of habeas corpus review, as well as habeas corpus relief therefore, Mr. Figueroa respectfully ask of this Court to issue review and relief of writ according to the Constitutional rights warranted to petitioner.



Gerardo Figueroa #172744
Buena Vista Correctional Facility
Po. Box 2017
Buena Vista, CO 81211

CLERK OF THE COURT
Alfred A. Arraj United States Court House
901 19th Street Room A105
Denver, Co. 80294-3589

* LEGAL MAIL *



9589 0710 5270 2444 7701 69

Retail

U.S. POSTAGE PAID